IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAURA WARD, as personal representative
of Valerie Ward, deceased,

    Plaintiff,

vs.                                                             CIVIL NO. 99-0098 LFG/DJS

PRESBYTERIAN HEALTHCARE SERVICES,
d/b/a Presbyterian Kaseman Hospital; PRESBYTERIAN
HEALTH PLAN, INC., d/b/a Presbyterian Salud;
FHC OPTIONS, INC., a foreign corporation; and
THE BOARD OF REGENTS OF THE UNIVERSITY
OF NEW MEXICO, d/b/a University of New Mexico
Mental Health Center; and ROBERT KELLOGG,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT THE BOARD OF REGENTS OF THE
## UNIVERSITY OF NEW MEXICO'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant The Board of Regents of The University of New Mexico's Motion to Dismiss Plaintiff's claim for violation of the Emergency Medical and Treatment and Active Labor Act and Negligence Per Se, Count Five of the First Amended Complaint, filed April 1, 1999 [Doc. 20].

Laura Ward ("Ward"), as personal representative of Valerie Ward, filed suit against Presbyterian Healthcare Services, Presbyterian Health Plan, Inc., FHC Options, Inc., and The Board of Regents of the University of New Mexico. In her complaint, Ward seeks to recover damages for violations of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, for negligence, for breach of contract and for violations of civil rights.

1

Defendant The Board of Regents of the University of New Mexico (UNM) moves to dismiss Ward's claims for violation of the Emergency Medical Treatment and Labor Act (EMTALA) and for Negligence Per Se. Movant states that because Ward's EMTALA and negligence claims are based upon the identical factual predicate, the EMTALA claim should be dismissed, otherwise any difference between EMTALA and a traditional negligence claim would be eviscerated. UNM further argues that because a violation of EMTALA cannot be equated with negligence, the negligence claim should be dismissed.

The motion to dismiss [Doc. 20], response and reply were filed, in accord with the district's motion practice rule, as a package on April 1, 1999. Oral argument is not necessary. This matter may be resolved based on the parties' submissions.

## Standards for Consideration of Motion to Dismiss

Motions to dismiss for failure to state a claim are infrequently granted. 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 1357 (1990). The Court is precluded from granting a motion to dismiss under Rule 12(b)(6) unless "The plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th Cir. 1995). In reviewing a motion to dismiss, the Court must "accept all well-pled allegations as true." id., and "indulge all reasonable inferences in favor of the plaintiff." Weatherhead v. Globe Intern., Inc., 832 F.2d 1226, 1228 (10th Cir. 1987). "The issue is not whether a plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974). It is with these standards in mind that the Court considers UNM's motion.

# **Factual background**[1]

On the morning of July 16, 1998, Laura Ward (Laura) took her daughter Valerie Ward (Valerie) to UNM Family Health Center in Albuquerque, New Mexico. There, Valerie received a medical evaluation by Dr. Ivan Pinon. Valerie's health insurance policy only covered psychiatric care at Presbyterian Kaseman Hospital (PKH) and required that Valerie first seek an evaluation from PKH. Dr. Pinon referred Valerie to PKH for evaluation and hospitalization, but was informed that no beds were available. Dr. Pinon then called UNM Mental Health Center (UNMMHC) to have Valerie admitted there for psychiatric evaluation and treatment. He was informed that Valerie's insurance program was inappropriate for payment at UNMMHC and that she could not be admitted to UNMMHC. Dr. Pinon then instructed Laura to take Valerie to PKH's mental health unit for evaluation, which she did.

After being refused admission to the Presbyterian Kaseman Hospital mental health unit, Laura took Valerie to the UNM Mental Health Center in the afternoon of July 16, 1998. While waiting, she was informed that UNMMHC had called PKH to obtain authorization for admission and that UNMMHC was awaiting a return call. Valerie was eventually interviewed by staff personnel, who informed Laura and Valerie that UNMMHC was still awaiting a return call from PKH regarding insurance coverage. At some point during the inverview, due to Valerie's agitation, the employee suggested that Valerie "go outside and have a smoke." Valerie left the UNMMHC, walked to a nearby building, and at some time between 4:45 and 5:00 p.m. jumped from the fifth floor, committing suicide.

---

[1] These facts, which the Court accepts as true, are drawn from Ward's complaint. Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th Cir. 1995).

**Emergency Medical Treatment and Labor Act**

Ward's complaint alleges that UNM violated EMTALA by: (1) delaying a medical screening examination and stabilizing treatment to inquire into payment status for services; (2) refusing to provide a medical screening examination because of an inability to obtain authorization from her insurance carrier; (3) improperly requiring prior authorization from the insurance carrier before providing a screening examination; and, (4) refusing admission to UNMMHC on the basis of insurance coverage and the ability to pay, despite a request for admission from a UNM-employed physician. (First Amended Complaint, paragraph 73 a-d). The complaint tracks two of the primary ways in which a hospital can violate EMTALA.

Congress created the Emergency Medical and Treatment and Active Labor Act, 42 U.S.C. § 1935dd in 1986. Section 1395dd(a) imposes a medical screening requirement upon hospitals with emergency departments: "[I]f any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services . . . to determine whether or not an emergency medical condition exists." Section 1395dd(b), provides in pertinent part: "(1) If any individual. . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either -- (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section . . . ." Section 1395dd(c) generally restricts transfers of unstabilized

patients, and Section 1395dd(d) authorizes both civil fines and a private cause of action for violations of the statute.

The purpose of EMTALA is to "prevent 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions are stabilized." Hardy v. New York City Health & Hospitals Corp., 164 F.3d 789, 792 (2nd Cir. 1999). The EMTALA statute was not intended to "ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances." Repp v. Anadarko Municipal Hospital, 43 F.3d 519 (10th Cir. 1994). EMTALA "places obligations of screening and stabilization upon hospitals and emergency rooms who receive patients suffering from an 'emergency medical condition'." Roberts v. Galen of Virginia, Inc., 119 S. Ct. 685 (1999). Section 1395dd(a) does not require that a hospital provide a medical screening in the abstract, but rather one that is appropriate "within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department." Therefore, the statute's requirement is hospital specific, varying with the specific circumstances of each provider. A hospital violates EMTALA's appropriate medical screening requirement when it does not follow its own screening procedures. Repp at 522. EMTALA imposes "a 'strict liability' on a hospital which violates [its] requirements." Abercrombie v. Osteopathic Hosp. Founders Ass'n, 950 F.2d 676, 681 (10th Cir. 1991). "If a hospital's emergency room does not provide an 'appropriate medical screening' it is strictly liable." Repp at 522, n.5.

Under EMTALA, UNMMHC is required to administer a standard screening examination to all individuals who present themselves and request medical evaluation and treatment. If UNMMHC

5

did not administer this standard evaluation to Valerie, regardless of the reason, then an EMTALA violation has occurred. Ward's allegation is that UNMMHC failed to provide an appropriate medical screening examination, and that this failure was due to the unanswered question regarding whether UNMMHC's treatment would be covered by Valerie's insurance. Whether UNMMHC did, or did not, provide to Valerie their standardized medical screening examination is a question to be answered by the fact-finder.

UNM's motion to dismiss alleges that a plaintiff may not use EMTALA as a substitute for a claim properly set forth under a theory of medical negligence. The proposition is that a court may not regard EMTALA and medical negligence as fungible legal theories. Supporting this claim, UNM cites Vickers v. Nash General Hospital, Inc., 78 F.3d 139 (4th Cir. 1996). The claim is that when both negligence and EMTALA claims are made in the same action, an "examination of both allegations reveals . . . that their reasoning would obliterate any distinction between claims of malpractice under state law and actions under EMTALA," then the EMTALA claim should be dismissed (quoting Vickers). UNM's interpretation of this section of Vickers is misplaced. The section quoted dealt with claims brought under both Section 1395dd(a)(appropriate screening examination) and Section 1395dd(b) (stabilization), not claims brought under both EMTALA and negligence. Vickers does not stand for the proposition that differing claims brought under an identical factual predicate cannot proceed independently (nor concurrently under a court's pendent jurisdiction). Rather, Vickers dealt with an issue of misdiagnosis, and held that when the claims are "at bottom ones of misdiagnosis, and because misdiagnosis must remain, as Congress intended, a matter of state malpractice law," the EMTALA claim was properly dismissed by the district court. Vickers at 145.

**Conclusion**

UNM's motion to dismiss fails because Ward has satisfied the pleading requirements for a 42 U.S.C. §1395dd claim by alleging that Valerie (1) went to UNM's hospital (2) with an emergency medical condition, and defendant hospital either (3) did not perform an adequate screening procedure to determine whether an emergency medical condition did exist, or (4) failed to provide necessary stabilizing treatment of a known emergency medical condition. Accepting these allegations as true, Ward states a claim against UNM. Thus, the Court must deny UNM's 12(b)(6) Motion to Dismiss.

In her response to the motion, Ward agreed to dismissal of the negligence per se claim against UNM if the EMTALA claim survives the motion to dismiss. (Plaintiff's Response, page 5, filed April 1, 1999). Ward may dismiss the claim if she so desires, even when the Court has not ordered a dismissal. Therefore, the claim of negligence per se will be dismissed.

                                                                  Lorenzo F. Garcia
                                                                   United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Guy Dicharry, Esq.

ATTORNEYS FOR DEFT. PRESBYTERIAN:
Andrew G. Schultz, Esq.
MacDonnell Gordon, Esq.

ATTORNEYS FOR DEFT. UNM:
W. Ann Maggiore, Esq.
James S. Bromberg, Esq.

ATTORNEYS FOR DEFT. FHC:
Gary L. Gordon, Esq.
Ruth M. Fuess, Esq.

ATTORNEY FOR DEFT. KELLOGG:
Kathleen C. Horan, Esq.