# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAURA WARD, as personal representative
of Valerie Ward, deceased,

       Plaintiff,

vs.                                                                                                                       CIVIL NO. 99-98 LFG/DJS

PRESBYTERIAN HEALTHCARE SERVICES,
d/b/a Presbyterian Kaseman Hospital; PRESBYTERIAN
HEALTH PLAN, INC., d/b/a Presbyterian Salud: FHC
OPTIONS, INC., a foreign corporation; THE BOARD OF
REGENTS OF THE UNIVERSITY OF NEW MEXICO,
d/b/a University of New Mexico Mental Health Center;
and ROBERT KELLOGG,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS

       THIS MATTER comes before the Court on Defendants Presbyterian Healthcare Services's ("PHS") and Presbyterian Health Plan's ("Presbyterian Salud") Motion to Dismiss EMTALA and Negligence Per Se Claims for Failure to State a Claim Upon Which Relief Can Be Granted [Doc.59]. The Presbyterian defendants move to dismiss counts one and four of Plaintiff's Second Amended Complaint, as those counts pertain to defendant Presbyterian Salud. In count one, Plaintiff alleges violation of 42 U.S.C. 1395dd (EMTALA); in count four, she asserts a claim for negligence per se based on violation of 42 U.S.C. § 1396u-2. In accord with the district's motion practice rule, the motion, response and reply were simultaneously filed. Oral argument is not necessary.

**Background**

Plaintiff Laura Ward ("Laura" or "Plaintiff") is the Personal Representative of her deceased daughter, Valerie Ward ("Valerie"). Plaintiff pursues several claims and causes of action against the various defendants in her Second Amended Complaint filed April 22, 1999. Against Defendant Presbyterian Salud, Plaintiff asserts a breach of contract claim (count two) and a negligence per se claim based on violation of 42 U.S.C. § 1396u-2 (count four) Although the present motion includes a request to dismiss a claim against Presbyterian Salud for violation of EMTALA, Plaintiff states that she has not asserted an EMTALA claim against that particular Defendant, and the complaint bears out this assertion. The Court previously dismissed claims against Presbyterian Salud for negligent infliction of emotional distress [Doc. 58], and civil rights [Doc. 67].

**General Statement of Facts**[1]

On July 16, 1998, Laura took her daughter Valerie to UNM Family Health Center in Albuquerque, New Mexico. There, Valerie was evaluated by Dr. Ivan Pinon. Valerie's health insurance plan through Presbyterian Salud only covered psychiatric care at Presbyterian Kaseman Hospital ("PKH") and required that Valerie first seek an evaluation from PKH. Dr. Pinon referred Valerie to PKH for evaluation and hospitalization, but was informed that no beds were available. Dr. Pinon then called UNM Mental Health Center ("UNMMHC") to have Valerie admitted there. He was informed that Valerie's insurance program was inappropriate for payment at UNMMHC and that she could not be admitted to UNMMHC. Dr. Pinon then instructed Laura to take Valerie to PKH's Mental Health Unit for evaluation, which she did.

---

[1] This Statement of Facts, accepted as true under Fed. R. Civ. P.12(b)(6) is drawn from Plaintiff's complaint. Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488 (10th Cir. 1995).

2

At the PKH Mental Health Unit, Laura informed hospital employees of the nature of her daughter's problems and said that the problems were the reasons they were at the Mental Health Unit. Laura requested that her daughter be admitted. Laura was informed that PKH had no space available and was told she should take Valerie to UNMMHC. No screening or evaluation was conducted by PKH.

Upon arriving at UNMMHC in the afternoon of July 16, 1998, Valerie was instructed to sign in, have a seat and wait to be seen. While waiting, she was informed that UNMMHC had called PKH to obtain authorization for admission and that UNMMHC was awaiting a return call. Laura and Valerie were eventually called into an office where an employee interviewed Valerie and informed Laura and Valerie that UNMMHC was still awaiting a return call from PKH regarding insurance coverage. At some point during the interview, due to Valerie's agitation, the employee suggested that she "go outside and have a smoke."

Between 4:00 and 4:30 p.m., Laura realized that Valerie was no longer in the area and she began a search. Valerie had left the UNMMHC, walked to a nearby building, and at some time between 4:45 and 5:00 p.m. jumped from the fifth floor, killing herself.

### Present Motion

PHS and Presbyterian Salud seek dismissal of Plaintiff's claims for EMTALA violation and for negligence per se, as they pertain to Presbyterian Salud. As noted above, the Second Amended Complaint does not allege a claim against Presbyterian Salud for an EMTALA violation, as Plaintiff acknowledges (at p.1) of her response memorandum. Thus, the motion to dismiss is moot on this point; to the extent the complaint could be interpreted otherwise, the motion to dismiss an EMTALA claim against Presbyterian Salud will be granted. The remaining issue before the Court is whether

3

Plaintiff sufficiently stated a cause of action against Defendant Presbyterian Salud for negligence per se for violation of 42 U.S.C. § 1396u-2.  The Court finds that she did not and therefore grants Defendants' motion to dismiss that claim.

### Federal Rules of Civil Procedure 12(b)(6) Standards

In reviewing a motion to dismiss, the Court must "accept all well-pled allegations as true," Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th Cir. 1995), and "indulge all reasonable inferences in favor of the plaintiff."  Weatherhead v. Globe Intern., Inc., 832 F.2d 1226, 1228 (10th Cir. 1987).  "The issue is not whether a plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974), *overruled on other grounds,* Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct 2727 (1982).  It is with these standards in mind that the Court considers Defendant's motion.

### Negligence Per Se Based on § 1396u-2

Plaintiff argues that Presbyterian Salud has violated 42 U.S.C. § 1396u-2 and thus is liable under a theory of negligence per se.  The required elements of a claim for negligence per se are: (1) there is a statute which prescribes certain actions or defines a standard of conduct; (2) the defendant violates the statute; (3) the plaintiff is in the class of persons sought to be protected by the statute; and (4) the harm or injury to the plaintiff is generally of the type that the legislature, through the statute, sought to prevent. Castillo v. United States, 552 F.2d 1385, 1388 (10th Cir. 1977).  The Court rejects the notion that 42 U.S.C. § 1396u-2 defines a standard of conduct for a managed care organization as it relates to enrollees.  Furthermore, in her complaint, Plaintiff has failed to allege facts sufficient to support her allegation that Presbyterian Salud violated the statute at issue, as essential element of a claim for negligence per se.

4

42 U.S.C. § 1396u-2 is not part of EMTALA and, unlike that statute, does not create duties owed to individuals. Both statutes are located in Chapter 7 of Title 42, but § 1396u-2 is found in Subchapter XIX, under "Grants to States for Medical Assistance Programs." The focus of this subchapter is on the rights and obligations of states in relation to the managed care entities with which states contract to provide medical assistance to Medicaid beneficiaries, and delineation of contractual requirements.

Subsection (a) of § 1396u-2 authorizes states to require Medicaid recipients to enroll in a managed care program. It defines managed care entities, provides for particular enrollment guidelines, requires that states and managed care entities provide certain information to enrollees, and requires that grievance and appeal procedures be established. Subsection (b) requires specificity in the contracts between the state and managed care providers, including the requirement that entities provide coverage for emergency services without regard to prior authorization or the provider's contractual relationship with the entity. The managed care entity must also demonstrate to the state that it offers an appropriate range of services and access to preventive and primary care services. Subsection (c) requires the state to develop and implement a quality assessment and improvement strategy, including an external independent review of managed care activities and contracts. Subsection (d) restricts certain activities of managed care entities to protect against fraud and abuse and provides procedures which the state must follow if noncompliance is found. Subsection (e) covers sanctions which the state can impose to enforce the statutory requirements. Subsection (f) requires a timeliness of payment clause in all contracts entered into under the subchapter.

All remedies for noncompliance with provisions of § 1396u-2 are sanctions instituted by the State for contractual violations. See §§ 1396u-2(d)(1)(B) and 1396u-2(e). In addition, each managed

care organization is required to establish specific internal grievance procedures to address an enrollee's challenge to denial of coverage, and the state and managed care entity must provide information to all enrollees and potential enrollees regarding the grievance and appeal procedure . See §§ 1396u-2(a)(5)(B)(iii) and 1396u-2(b)(4).

Section 1396u-2 is an administrative enabling statute that provides States a tool to fulfill their obligations to manage and administer Medicaid requirements, provide the greatest range of medical services to Medicaid beneficiaries, and to do so in an efficient and effective manner. The statute delineates administrative procedures and contractual requirements that states and managed care entities must follow and gives states the ability to require Medicaid beneficiaries to enroll with managed care entities. The statute does not address a particular class of persons sought to be protected; rather, it enables states to more effectively administer and manage the provision of benefits to Medicaid program beneficiaries.

Plaintiff's theory of Presbyterian Salud's liability under this statute has not been pled with the requisite specificity. It is difficult to discern the exact portions of § 1396u-2 which Plaintiff claims were violated, proximately resulting in her daughter's death. The complaint does not make this clear, alleging only generally that under § 1396u-2, Presbyterian Salud was required to provide coverage for emergency behavioral health services and to possess the adequate capacity and services for its Medicaid beneficiaries, and that it violated this section by failing to ensure that Valerie had access to emergency services and to inpatient psychiatric care on July 16, 1998. (Second Amended Complaint, ¶¶ 67, 68).

In her memorandum in response to Defendants' motion to dismiss, Plaintiff identifies two subsections of § 1396u-2 that she alleges create negligence per se liability on the part of Presbyterian

Salud. Section 1396u-2(a)(1)(B) defines "managed care entity" in part as an organization "that provides or arranges for services for enrollees," arguing that "[t]his is the legislative statement of the broad duty owed by Defendant Salud to Valerie Ward." The Court rejects the notion that this definitional section establishes a standard of conduct sufficiently specific, or sufficiently mandatory, to form the basis of a tort duty to an individual.

Plaintiff also cites in her memorandum § 1396u-2(b), entitled "Beneficiary Protections," as the basis for her negligence per se claim against Presbyterian Salud. This section provides that every contract between a state and a managed care organization must contain a clause requiring the organization to provide coverage for emergency services, without regard to prior authorization or the hospital's contractual relationship with the organization. Even if Presbyterian Salud failed to fulfill an obligation under this clause of its contract with the state, as described in this subsection, that failure would not constitute a violation of the statute, which requires only that certain provisions be included in contracts between states and managed care organizations. There is no allegation in the complaint that the contract between Presbyterian Salud and the State of New Mexico does not contain the provision required by § 1396u-2(b)(2)(A). In sum, the complaint does not set forth sufficient facts to state a claim of negligence per se based on § 1396u-2.

## Conclusion

In her Second Amended Complaint, Plaintiff alleges that Presbyterian Salud is a New Mexico for-profit health maintenance organization, that it was Valerie Ward's health insurance carrier, that it covered her psychiatric care only at Presbyterian Kaseman Hospital, that it entered into a contract with the State of New Mexico and with Valerie to provide behavioral health services, and that it violated its duties under 42 U.S.C. § 1396u-2. These allegations are insufficient to provide the basis

7

for a negligence per se claim based on § 1396u-2. Plaintiff has failed to demonstrate that the statute sets forth a standard of conduct for managed care organizations and has failed to plead facts sufficient to demonstrate that Presbyterian Salud violated the statute or was involved in the denial of benefits to decedent. Defendant's motion will therefore be granted.

IT IS THEREFORE ORDERED that PHS and Presbyterian Salud's Motion to Dismiss EMTALA and Negligence Per Se Claims for Failure to State a Claim [Doc. 59] is granted.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Guy Discharry, Esq.

ATTORNEYS FOR PRESBYTERIAN:
Andrew G. Schultz, Esq.
MacDonnell Gordon, Esq.