# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LAURA WARD, as personal representative
of Valerie Ward, deceased,

      Plaintiff,

vs.                                            CIVIL NO. 99-98 LFG/DJS

PRESBYTERIAN HEALTHCARE SERVICES,
d/b/a Presbyterian Kaseman Hospital; PRESBYTERIAN
HEALTH PLAN, INC., d/b/a Presbyterian Salud; FHC
OPTIONS, INC., a foreign corporation; THE BOARD OF
REGENTS OF THE UNIVERSITY OF NEW MEXICO,
d/b/a University of New Mexico Mental Health Center;
and ROBERT KELLOGG,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING UNM BOARD OF REGENTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant The Board of Regents of the University of New Mexico's ("UNM") motion for Relief From Judgment and to Dismiss All Claims [Doc. 69]. On the basis of three recent United States Supreme Court cases involving Eleventh Amendment immunity, UNM moves under Fed. R. Civ. P. 60(b) for relief from the Court's June 28, 1999 order denying UNM's earlier Motion to Dismiss. Defendant asks the Court to dismiss all claims against it under Fed. R. Civ. P. 12(b), for lack of subject matter jurisdiction. In accord with the district's motion practice rule, the motion, response and reply were simultaneously filed. Oral argument is not necessary. The Court finds, based on recent Supreme Court authority, that UNM's motion is well-taken, and it will be granted.[1]

---

[1] The Court also grants Plaintiff's request [Doc. 74] for leave to withdraw her original response to Defendant's motion and to substitute an amended response.

**Background**

Laura Ward ("Laura" or "Plaintiff") is the Personal Representative of her deceased daughter, Valerie Ward ("Valerie"). Laura pursues several claims and causes of action against the various Defendants in her Second Amended Complaint filed April 22, 1999. Against Defendant UNM, Laura asserts common law tort claims, claims arising under the Emergency Medical Treatment and Active Labor Act (EMTALA) 42 U.S.C. § 1395dd, and civil rights claims under 42 U.S.C. § 1983.

**General Statement of Facts**[2]

On July 16, 1998, Laura took her daughter Valerie to UNM Family Health Center in Albuquerque, New Mexico. There, Valerie was evaluated by Dr. Ivan Pinon. Valerie's health insurance plan through Presbyterian Salud covered psychiatric care only at Presbyterian Kaseman Hospital ("PKH") and required that Valerie first seek an evaluation from PKH. Dr. Pinon referred Valerie to PKH for evaluation and hospitalization, but was informed that no beds were available. Dr. Pinon then called UNM Mental Health Center ("UNMMHC") to have Valerie admitted there. He was informed that Valerie's insurance program was inappropriate for payment at UNMMHC and that she could not be admitted to UNMMHC. Dr. Pinon then instructed Laura to take Valerie to PKH's Mental Health Unit for evaluation, which she did.

At the PKH Mental Health Unit, Laura informed hospital employees of the nature of her daughter's problems, and requested that her daughter be admitted. Laura was informed that PKH had no space available and was told she should take Valerie to UNMMHC. No screening or evaluation was conducted by PKH.

---

[2] This Statement of Facts, accepted as true under Fed. R. Civ. P.12(b)(6) is drawn from Plaintiff's complaint. Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488 (10th Cir. 1995).

2

Upon arriving at UNMMHC in the afternoon of July 16, 1998, Valerie was instructed to sign in, have a seat, and wait to be seen. While waiting, she was informed that UNMMHC called PKH to obtain authorization for admission and that UNMMHC was awaiting a return call. Laura and Valerie were eventually called into an office where an employee interviewed Valerie and informed Laura and Valerie that UNMMHC was still awaiting a return call from PKH regarding insurance coverage. At some point during the interview, due to Valerie's agitation, the employee suggested that she "go outside and have a smoke."

Between 4:00 and 4:30 p.m., Laura realized that Valerie was no longer in the area and she began a search. Valerie had left the UNMMHC, walked to a nearby building, and at some time between 4:45 and 5:00 p.m. jumped from the fifth floor, killing herself.

## **Present Motion**

Defendant UNM previously sought dismissal of Plaintiff's claims for violation of 42 U.S.C. § 1395dd ("EMTALA") and for negligence *per se* [Doc. 20]. This motion was denied by the Court on June 28, 1999 [Doc. 63], although Plaintiff's claim for negligence *per se* was dismissed at her request. Defendant submitted a motion to dismiss Plaintiff's civil rights claims on grounds that EMTALA cannot be enforced by an action under Section 1983 [Doc. 24]. The Court denied this motion on August 30, 1999, holding that EMTALA does indeed create a right to certain medical care that is cognizable as a Section 1983 civil rights claim [Doc. 68]. Defendant UNM now brings this motion for relief from the order of June 28, 1999, and, in addition, seeks dismissal of all claims against it on grounds that the Court lacks jurisdiction due to state sovereign immunity under the Eleventh Amendment.

3

In light of the new authority cited by UNM, the Court grants the motion and dismisses all claims against UNM. This ruling does not affect Plaintiff's right to proceed against UNM in state court under the New Mexico Tort Claims Act.

**Standards Under Rule 12(b)(6) and 60(b)**

UNM seeks dismissal under Rule 12(b)(6). In reviewing a motion to dismiss under this rule, the Court must "accept all well-pleaded allegations as true," Maez v. Mountain States Tel. & Tel., Inc., at 1496, and indulge all reasonable inferences in favor of the plaintiff. "The question is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims." Weatherhead v. Globe Intern., Inc., 832 F.2d 1226, 1228 (10th Cir. 1987).

UNM also proceeds under Rule 60(b), asking that the Court grant relief from its previous order denying the earlier motion to dismiss, on grounds that the judgment (i.e., order) is void, that a prior authority upon which the earlier judgment is based has been overruled and it is no longer equitable that the judgment should have prospective application, and under the catchall ground of Rule 60(b)(6), "any other reason justifying relief from the operation of the judgment."

Under the recent Supreme Court authority cited by Defendant, the Court lacks subject matter jurisdiction over Plaintiff's claims against UNM. See, Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, 119 S. Ct. 2199, 67 U.S.L.W. 4580 (June 23, 1999); College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 119 S. Ct. 2219, 67 U.S.L.W. 4590 (June 23, 1999); Alden v. Maine, 119 S. Ct. 2240, 67 U.S.L.W. 4601 (June 23, 1999). Even indulging all inferences in favor of Plaintiff, it is thus apparent that she cannot state a claim upon which relief can be granted in federal court against this Defendant.

**Eleventh Amendment Immunity**

The Eleventh Amendment bars suits against states in federal courts for damages allegedly caused by states, state agencies and state officials in their official capacities unless the state unequivocally waives its immunity or Congress expressly abrogates the state's immunity in creating a statutory cause of action. Archuleta v. Lacuesta, 131 F.3d 1359, 1361 (10th Cir. 1997).

The Eleventh Amendment "evidenc[es] and exemplif[ies]" the concept of state sovereign immunity implicit in the original Constitution. Alden v. Maine, 119 S. Ct. at 2254, 67 U.S.L.W. 4601, 4607. The Board of Regents of the University of New Mexico is an arm of the State of New Mexico, and Defendant UNM is therefore clothed with Eleventh Amendment immunity. Mascheroni v. Bd. of Regents of the Univ. of Calif., 28 F. 3d 1554, 1559 (10th Cir. 1994); Innes v. Kansas State University, No. 97-3363, 1999 WL 641865, at *2 (10th Cir. Aug. 24, 1999).

There are two circumstances in which a state, or an arm of the state, may be subject to suit by an individual in federal court, notwithstanding the Eleventh Amendment, Archuleta v. Lacuesta. They are: (1) if Congress abrogates the state's immunity in the exercise of its power of enforcement under § 5 of the Fourteenth Amendment (Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 2672 (1976)); or (2) if the state voluntarily waives its immunity (Clark v. Barnard, 108 U.S. 436, 447, 2 S. Ct. 878, 883 (1883)).

In three recent rulings, the Supreme Court significantly restricted the scope of these exceptions to Eleventh Amendment immunity, and in so doing put sharp limits on Congress' power to make federal law binding on the states. Florida Prepaid, College Savings, and Alden, cited supra at 4. Under these new interpretations of the federal-state balance, the Court now concludes that it lacks

subject matter jurisdiction over all claims against Defendant UNM in this case, and those claims must be dismissed.

**Abrogation**

To determine whether a congressional enactment validly abrogates the states' sovereign immunity, a court must answer two questions: (1) whether Congress has unequivocally expressed its intent to abrogate the immunity; and (2) whether Congress has acted pursuant to a valid exercise of power. Florida Prepaid, 119 S. Ct. at 2205, 67 U.S.L.W. at 4582.

EMTALA does not meet the first part of the test, in that it contains nothing that can be construed as unequivocal expression of an intent to abrogate Eleventh Amendment immunity for state owned and operated hospitals. Compare the language of the patent statute at issue in Florida Prepaid: "Any State . . . shall not be immune, under the eleventh amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court . . . for infringement of a patent," 35 U.S.C. § 296(a); or the ADA, the statute at issue in Martin v. Kansas, Nos. 98-3102, 98-3118, 1999 WL 635916 (10th Cir. Aug. 19, 1999) ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter"). EMTALA contains no similar unequivocal language of this sort.

The second part of the abrogation test requires the Court to determine whether Congress acted under a valid exercise of power in passing EMTALA, insofar as that Act is interpreted to apply to hospitals operated by an arm of the state. In Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72-73, 116 S. Ct. 1114, 1131-32 (1996), the Supreme Court held that Congress cannot abrogate the states' sovereign immunity under its general Article I legislative powers; it can do so only under § 5 of the

Fourteenth Amendment, which gives Congress the power "to enforce, by appropriate legislation, the provisions of this article." Thus, it is only when acting in "the carefully delimited remediation or prevention of constitutional violations" that Congress may abrogate a state's sovereign immunity. College Savings, 119 S. Ct. at 2224, 67 U.S.L.W. at 4592.

The Constitution does not create an entitlement to medical care under the circumstances of this case. See, Jackson v. Byrne, 738 F.2d 1443, 1447 (7th Cir. 1984); Youngberg v. Romeo, 457 U.S. 307, 317, 102 S. Ct. 2452, 2459 (1982); Harris v. McRae, 448 U.S. 297, 318, 100 S. Ct 2671, 2689 (1980); Maher v. Roe, 432 U.S. 464, 469, 97 S. Ct. 2376, 2380 (1977); Wideman v. Shallowford Community Hospital, Inc., 826 F.2d 1030, 1035, 1035 (11th Cir. 1987). Indeed, Plaintiff has not asserted a constitutional right to medical care; instead, she bases her cause of action on a duty created by the statutory provisions of EMTALA. (Second Amended Complaint ¶¶ 82, 83, 84, 100, 101 and 102).

In passing EMTALA, Congress was not acting to prevent constitutional violations. The purpose of EMTALA is to assure adequate medical care to all persons regardless of whether they have health insurance, and to prevent "patient dumping." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 792 (2d Cir. 1999). Although the rights created by EMTALA are important and are "proper Article I concerns" (Florida Prepaid, 119 S. Ct. at 2211, 67 U.S.L.W. at 4585), they are not rights which are secured by the Fourteenth Amendment. Because Congress was not acting through EMTALA to prevent constitutional violations, the statute does not create a valid abrogation of New Mexico's Eleventh Amendment immunity. Therefore, Plaintiff's claims against UNM must fail unless she can show that UNM waived its immunity.

## Waiver

Statutory creation of a cause of action can, at times, be viewed as a state's waiver of Eleventh Amendment immunity. Archuleta v. Lacuesta. However, the test for determining whether a state has waived its immunity from federal court jurisdiction is a stringent one. College Savings, 119 S. Ct. at 2226, 67 U.S.L.W. at 4593. A waiver will be found only if the state voluntarily invokes the federal court's jurisdiction, or else makes a "clear declaration" that it intends to submit to that jurisdiction. The state's consent must be "unequivocally expressed." Id.; Jicarilla Apache Tribe v. Kelly, 129 F.3d 535, 538 (10th Cir. 1997).

College Savings expressly overruled Parden v. Terminal Railway of the Alabama State Docks Department., 377 U.S. 184, 84 S. Ct. 1207 (1964), which held that a state may waive its immunity by implication. Parden held that a state-owned and operated railroad could be sued under the FELA, since the state constructively waived its sovereign immunity by the act of engaging in the Commerce Clause type of activity regulated by the statute. See also, Duke v. Dept. of Agric., 131 F.3d 1407, 1408 (10th Cir. 1997). In Duke, the circuit court held that New Mexico did not waive Eleventh Amendment immunity "by engaging in activities and entering contracts subject to federal regulation." The Court in College Savings eliminated the doctrine of constructive waiver, holding that it cannot be squared with the requirement that a waiver of sovereign immunity must be clear and unequivocal:

> There is a fundamental difference between a State's expressing unequivocally that it waives its immunity, and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity.

College Savings, 119 S. Ct. at 2228, 67 U.S.L.W. at 4594.

It is of no consequence that the conduct in question consists of commercial activity or is traditionally performed by private citizens and corporations, since those factors have no bearing on the voluntariness of the waiver. Id., 119 S. Ct. at 2230, 67 U.S.L.W. at 4595. Thus, it is irrelevant in our present case, under the new Eleventh Amendment regime, that UNM operates a hospital, an activity also commonly performed by private companies and associations; the only relevant question is whether UNM voluntarily and unequivocally waived its immunity from suit in federal court for violation of the "patient dumping" prohibition of EMTALA.

Defendant says it has not. Plaintiff, on the other hand, argues that the New Mexico Tort Claims Act (NMTCA), N.M.S.A. 1978, §§ 41-4-1 *et seq.,* is evidence that New Mexico has expressly waived its immunity. Specifically, Plaintiff argues that New Mexico waived its immunity for tort claims in cases involving the operation of a hospital or the provision of health care services.

New Mexico long adhered to the judicially created common law doctrine of sovereign immunity. Dougherty v. Vidal, 37 N.M. 256, 257-58, 21 P.2d 90, 91 (1933).

> It is a fundamental doctrine at common law and everywhere in America that no sovereign state can be sued in its own courts or in any other without its consent and permission.

State ex rel. Evans v. Field, 27 N.M. 384, 201 P. 1059, 1060 (1921).

This was to change as a result of a tragic accident which occurred near Fort Sumner, New Mexico in 1972, when a school bus collided with a cattle truck on a narrow bridge constructed and maintained by the State Highway Department. The horrific collision took the lives of numerous children and adults. In one lawsuit brought against the State of New Mexico arising from this collision, the New Mexico Supreme Court abolished sovereign immunity for tort actions. Hicks v. State, 88 N.M. 588, 544 P.2d 1153 (1975). The supreme court found that the belief that "the

9

sovereign can do no wrong" was archaic and unjust, and that the rationalizations which had been advanced to justify adherence to the doctrine were invalid. The supreme court used the Hicks litigation as an opportunity to strike down sovereign immunity as a defense by the State or its political subdivisions in tort actions. However, so as to allow the State an opportunity to prepare for the abolishment of this doctrine, the New Mexico Supreme Court gave its ruling prospective application for torts occurring after July 1, 1976 (Hicks v. State, *order on reh'g*, 88 N.M. 588, 593, 544 P.2d 1153, 1158 (1976)).

The supreme court's action in abolishing sovereign law immunity for tort actions caused the New Mexico State Legislature to respond by enacting the Tort Claims Act, which reinstated governmental immunity, except in eight specific classes of action. N.M.S.A. 1978, § 41-4-1 *et seq.*; Fireman's Fund v. Tucker, 95 N.M. 56, 618 P.2d 894 (Ct. App. 1980). section 41-4-2 of the Tort Claims Act provides in relevant part, "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . ." Further, Section 41-4-4 declares that governmental entities and public employees, while acting within the scope of their duties, shall be immune from liability from any tort, except as waived by the Act. Tompkins v. Carlsbad Irrigation Dist., 96 N.M. 368, 630 P.2d 767 (Ct. App. 1981).

With the adoption of the NMTCA, New Mexico's appellate courts concluded that a cause of action does not exist against the State or governmental entity unless immunity has been specifically waived. In Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985), *rev'd on other grounds*; Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986), the court stated:

> The public policy declaration of Section 41-4-2, and the immunities proviso of Section 41-4-4, taken together, require that plaintiffs' cause of action must fit within one of the exceptions to the immunity granted

10

> to governmental entities and public employees. If immunity has been
> waived, the particular agency that caused the harm may be held liable
> for the negligent act or omission of the public employee.

Under the requirements of New Mexico's Tort Claims Act, a court must first determine whether immunity has been waived for the claim against the governmental entities and public employees acting within the scope of their employment. Consent to be sued under the Tort Claims Act may not be implied, but must be specifically found within one of the exceptions under the Act. Redding v. City of Truth or Consequences, 102 N.M. 226, 693 P.2d 594 (Ct. App. 1984). Here, Plaintiff argues that the NMTCA provides exceptions to the state's sovereign immunity for damages resulting from bodily injury or wrongful death caused by the negligence of public employees while acting in the scope of their duties "in the operation of any hospital," (§ 41-4-9), and while "providing health care services" (§ 41-4-10).

The NMTCA, however, does not save Plaintiff's federal cause of action; indeed, it contains an express statement that it does not consent to federal jurisdiction: "Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in the district courts of New Mexico." N.M.S.A. 1978, § 41-4-18(A). In addition, the NMTCA states, "it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act," N.M.S.A. 1978, § 41-4-2(A), and the waivers of sovereign immunity in the NMTCA are "limited to and governed by the provisions of" the Act. N.M.S.A. 1978, § 41-4-4(A). These are very clear statements that the State of New Mexico does not intend to waive its sovereign immunity, for claims involving negligence in providing health care services, in any forum other than New Mexico state courts. Federal courts have confirmed their understanding of the limitations the state has placed on this waiver:

> Under its Tort Claims Act, the State of New Mexico has consented to suits against its entities and employees acting within the scope of their duty for enumerated unintentional torts . . . . But that consent is limited to actions commenced in the state district courts . . . . Accordingly, Bishop cannot pursue his claim against the New Mexico Department of Corrections and its employees acting within the scope of their employment in the federal district court, but rather is relegated to the state district court to seek relief consistent with the limited waiver of immunity under § 41-4-18.

Bishop v. John Doe I, 902 F.2d 809, 810 (10th Cir. 1990). See also, Innes, at * 3; Wojciechowski v. Harriman, 607 F. Supp. 631, 634 (D.N.M. 1985) ("Providing for a limited waiver of its sovereign immunity, the State of New Mexico has expressly reserved its immunity from suit in federal court under the eleventh amendment"); and Flores v. Long, 926 F. Supp. 166, 167-68 (D.N.M. 1995), app. dismissed, 110 F.3d 730 (10th Cir. 1997) ("Under the Tort Claims Act, New Mexico has waived its immunity from suit in its own state courts for actions of law enforcement officers . . . However, New Mexico has not waived its Eleventh Amendment immunity from suit in federal court"). And in College Savings, 119 S. Ct. at 2226, 67 U.S.L.W. at 4593, the Supreme Court noted that "[a] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."

Plaintiff cites the NMTCA as the source of New Mexico's waiver of sovereign immunity, and argues that this waiver extends to actions in federal court under EMTALA, a different statute altogether. EMTALA does authorize individuals to bring suit for damages in accordance with the law of the state in which the hospital is located. 42 U.S.C. § 1395dd(d)(2)(A). But when the defendant hospital is an arm of the state, the Eleventh Amendment prohibits such a suit in federal court unless the state gives its unequivocal consent, and it is clear that New Mexico has not consented to be sued anywhere except in its own courts. It is also true that EMTALA could conceivably be seen as establishing a duty of care on the part of a hospital, which duty could be incorporated into the elements

12

of a cause of action against UNM under the NMTCA. Such an action, however, is simply not cognizable in federal court due to the Supreme Court's Eleventh Amendment jurisprudence. Plaintiff has, thus, failed to demonstrate that the State of New Mexico waived its Eleventh Amendment immunity to suit in federal court, even though it allows itself to be sued in state court for the negligence of its employees based on the operation of a hospital or the provision of medical care.

The Court notes that, although constructive waiver is no longer the law, it is possible for a state defendant to waive sovereign immunity "through its affirmative conduct" (Innes, at *4), such as accepting federal funds with the condition attached that it will abide by federal statutory provisions. Innes, at *5; College Savings, at 119 S. Ct. at 2231, 67 U.S.L.W. at 4596 ("Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take . . . [because] acceptance of the funds entails an agreement to the actions"). Plaintiff has not brought to the Court's attention evidence that UNM has entered into any such contracts with conditions attached.

## EMTALA Claim in State Court

Plaintiff contends that, if her EMTALA claim cannot proceed in federal court, she should nevertheless be allowed to bring an action under the federal statute in state court. This assertion was directly addressed in Alden v. Maine, 119 S. Ct. at 2266, 67 U.S.L.W. at 4609 wherein the Supreme Court held that "the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." Thus, although Plaintiff may still bring an action against UNM under the NMTCA in state court, she may not bring an action under EMTALA in either the federal or state forum.

13

### Section 1983 Action Based on EMTALA

In an earlier Memorandum Opinion [Doc. 68], this Court held that EMTALA does provide the basis for an action under Section 1983. This would be true, but for Eleventh Amendment immunity as it has recently been expounded by the Supreme Court. Under the new cases, a federal court does not have subject matter jurisdiction to hear a claim against a state actor, where the basis of the claim is statutory, rather than constitutional, and the state has not voluntarily, expressly, and unequivocally consented to such jurisdiction. Florida Prepaid; College Savings; Flores v. Long.

### Other Tort Claims Against UNM

Defendant UNM argues that all remaining claims against it must be dismissed on Eleventh Amendment grounds. Plaintiff has asserted tort claims against UNM based on negligence in failing to provide evaluation and treatment, (Count 5 of Second Amended Complaint), negligence in training and supervising its employees (Count 6), and negligent infliction of emotional distress (Count 10). Even if these torts are covered by the New Mexico Tort Claims Act, the state has not waived its sovereign immunity in any forum other than state court. NMSA § 41-4-18(A). The recent Supreme Court cases make clear that a state's sovereign immunity is to be accorded great deference, and any waiver is to be narrowly construed. Thus, the federal courts are bound by the New Mexico's waiver limiting its tort exposure to cases brought in state court. See, College Savings, 119 S. Ct. at 2226, 67 U.S.L.W. at 4593 ("[a] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation"). Thus, all claims against Defendant UNM must be dismissed.

### Conclusion

The Supreme Court's recent decisions make clear that Congress does not have the power to make statutes such as EMTALA applicable to state-run hospitals without the state's express consent.

New Mexico has not consented to be sued in federal court for violations of EMTALA, nor for any other tort. The result is that allegations of patient dumping by state-run hospitals cannot be redressed in either state or federal court, even though Congress has passed a statute that expressly prohibits such practices. This ruling does not affect Plaintiff's right to pursue any remedies she may have in state court under the New Mexico Tort Claims Act.

IT IS THEREFORE ORDERED that Plaintiff's request to withdraw her original response to Defendant's motion and to substitute an amended response [Doc. 74] is granted.

IT IS FURTHER ORDERED that UNM's motion to dismiss [Doc. 69] is granted. The Court hereby dismisses all claims against Defendant The Board of Regents of the University of New Mexico

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Guy Dicharry, Esq.

ATTORNEY FOR PRESBYTERIAN:
Andrew G. Schultz, Esq.
MacDonnell Gordon, Esq.

ATTORNEYS FOR BOARD OF REGENTS:
Steven S. Scholl, Esq.
Cynthia L. Weisman, Esq.

ATTORNEYS FOR FHC OPTIONS:
Gary L. Gordon, Esq.
Ruth M. Fuess, Esq.

ATTORNEY FOR KELLOGG:
Kathleen C. Horan, Esq.